# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CHRISTOPHER D. NOVAK,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:22CV00010 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **TROOPER ALLEN T. STUART,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Andrew Lucchetti and Darrell J. Getman,* HALPERN LAW CENTER, LLC, *Glen Allen, Virginia, for Plaintiff; Sheri H. Kelly, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, *Abingdon, Virginia, for Defendant.*

Plaintiff Christopher D. Novak sues Virginia State Police Trooper Allen T. Stuart because of Trooper Stuart's arrest and prosecution of Mr. Novak for driving while under the influence. Novak asserts that he was instead suffering a medical emergency and that Trooper Stuart had no probable cause to believe otherwise. Trooper Stuart has moved to dismiss all three counts in the Complaint, as well as Novak's request for punitive damages, pursuant to Federal Rule of Civil Procedure 12(b)(6). He contends that the facts alleged show that he had probable cause to arrest Novak and to obtain a warrant against him.

The Motion to Dismiss has been fully briefed and is ripe for decision. For the reasons that follow, I will deny the motion.[1]

I.

This case arises from Trooper Stuart's arrest of Novak and his subsequent obtaining of a criminal warrant against him. The First Amended Complaint (FAC) alleges the following facts, which I must accept as true for the purpose of deciding the Motion to Dismiss.

On December 15, 2020, Novak was traveling northbound on Interstate 77 in Bland County, Virginia. As he was driving, he noticed he could not control his head and was uncontrollably biting his lip. He did not understand what was happening but knew something was wrong. Novak pulled off to the side of the road and became stuck in the mud.

At some point, a bystander saw Novak's vehicle and called 911. The bystander advised that Novak was "completely stopped in the roadway" and that the situation "looked like a medical emergency." FAC ¶ 12, ECF No. 7. Trooper Stuart was dispatched to the scene and arrived to find Novak attempting to reverse his

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

vehicle out of the mud on the side of the road, which Novak struggled to do because of the confusion caused by a then-undiagnosed medical condition.[2]

Trooper Stuart walked up to the Novak's driver's side window and asked Novak to put the vehicle in park and turn it off. Still confused and disoriented, Novak attempted to turn off his vehicle before placing it in park. Novak had blood on his face and sweatshirt.

Thereafter, Trooper Stuart asked Novak to exit his vehicle and to perform a stand and walk sobriety test, which Trooper Stuart claimed Novak failed due to a lack of balance.[3] At the time, Novak was wearing shorts and was shivering due to the cold December weather and was still confused.

Novak then consented to a search of his person and vehicle. Trooper Stuart did not find any signs of drugs or alcohol during this search. At some point, EMS arrived and asked to evaluate Novak. Still confused, he declined the evaluation. Trooper Stuart then asked Novak to take a breathalyzer test, which read 0.00. At no point did Trooper Stuart smell any drugs or alcohol. Moreover, Novak never slurred his words, and his eyes were not bloodshot.

---

[2] Trooper Stuart contends that he had observed that Novak had "unilaterally lost control of his vehicle." Mem. Supp. 14, ECF No. 10. However, I must accept Novak's allegation that he pulled off to the side of the road as true at this stage in the litigation.

[3] Trooper Stuart asserts that Novak performed "a number of sobriety tests," *Id.* at 13; *see id.* at 14 (explaining that Novak failed "multiple" tests), but that is not alleged in the FAC.

Trooper Stuart proceeded to handcuff Novak, and placed Novak in the front seat of the police vehicle, which Novak alleges contravenes standard State Police policy. Trooper Stuart escorted Novak to the Wythe County Community Hospital. While en route, Novak's confusion subsided, and he conversed with Trooper Stuart. Trooper Stuart apologized "for having to follow through with Mr. Novak's arrest." *Id.* ¶ 35.

At the hospital, Novak "again" told Trooper Stuart that he had not taken drugs or consumed alcohol, *id.* ¶ 36,[4] and he agreed to a blood test and a second breathalyzer test. The second breathalyzer test, like the first, read 0.00. Novak did not receive medical treatment at the hospital, but it is not alleged that this was because Novak refused it as he did initially with EMS personnel.

Trooper Stuart then took Novak to a State magistrate, where Trooper Stuart obtained a warrant against Novak for driving while intoxicated. Trooper Stuart did not inform the magistrate that Novak passed multiple breathalyzer tests, that Novak exhibited signs of injury, or that Trooper Stuart did not find any evidence of drugs or alcohol during his search. Novak was transported to New River Regional Jail,

---

[4] It is not clear from the FAC when Novak first told Stuart he hadn't consumed any alcohol or taken any drugs.

where he spent one night. The charge was dismissed four months later.[5] At some point after the incident, Novak learned he had a brain tumor that caused him to have a seizure during his drive through Bland County.

## II.

Under federal pleading rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). In evaluating a complaint, the court accepts all factual allegations as true and views them in the light most favorable to the non-moving party. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must contain more than mere legal conclusions or a recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[5] Novak alleges that his blood test results later came back negative for drugs and alcohol. Trooper Stuart filed a Certificate of Analysis with his Memorandum in Support of his Motion to Dismiss, which includes the results of the blood test. Mem. Supp. Ex. A, ECF No. 10-1. The results contained within the certificate are irrelevant at this juncture because they were not known to Trooper Stuart when he arrested Novak or swore out the warrant. See Section III, *infra*.

III.

*A. Malicious Prosecution.*

Novak asserts claims for malicious prosecution in two counts of the FAC. In Count I, he asserts a federal claim under § 1983 based on a violation of his Fourth Amendment right against unreasonable seizure. In Count II, he asserts a claim under Virginia common law. I will consider these two counts jointly.

A § 1983 malicious prosecution claim is a "Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Hupp v. Cook*, 931 F.3d 307, 323–24 (4th Cir. 2019) (internal quotation marks and citations omitted). The "gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause. And the wrongful initiation of charges without probable cause is likewise the gravamen of the tort of malicious prosecution." *Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022). Thus, to state a claim for malicious prosecution, a plaintiff must plead facts plausibly showing that the defendant caused a seizure of the plaintiff pursuant to legal process unsupported by probable cause and criminal proceedings terminated in the plaintiff's favor. *Id.* at 1338. The Virginia tort requires a plaintiff to plead the element of malice, *Cadmus v. Williamson*, No. 5:15–cv–00045, 2016 WL 929279, at *10 (W.D. Va. Feb. 1, 2016) (considering § 1983 and Virginia malicious prosecution claims), *R. & R. adopted by* 2016 WL 1047087 (W.D. Va. Mar. 10,

2016), and malice can be inferred from a lack of probable cause, *Reilly v. Shepherd*, 643 S.E.2d 216, 219 (Va. 2007). [6]

Trooper Stuart contends that that the FAC does not allege facts indicating he lacked probable cause to arrest Novack and that the facts do not suggest such probable cause dissipated prior to his obtaining the arrest warrant.[7] Furthermore, Novak argues that he is entitled to qualified immunity.

Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances, shown, that the suspect has committed an offense, is committing, or is about to commit an offense." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks and citations omitted);

---

[6] It has been noted that the Fourth Circuit has rejected malice as an element of a Fourth Amendment claim. *Snider v. Seung Lee*, 584 F.3d 193, 203 n.1 (4th Cir. 2009) (Stamp, J., concurring). The Supreme Court has not decided whether a plaintiff bringing a Fourth Amendment malicious prosecution claim must establish malice in addition to the absence of probable cause. *Thompson*, 142 S. Ct. at 1338 n.3.

[7] The Fourth Circuit has held that a complaint that alleges a warrantless arrest lacked probable cause can serve as the basis for a false arrest claim, whereas an arrest made pursuant to a warrant that lacked probable cause can serve as the basis for a malicious prosecution claim. *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017). This is because malicious prosecution requires that the defendant seize or cause the plaintiff to be seized *pursuant to legal process*. *Hupp*, 931 F.3d at 324; Graves v. Taylor, No. 319-cv-00033, 2021 WL 2403148, at *2–3 (W.D. Va. June 11, 2021). Thus, where an officer did not have any involvement in continued detention pursuant to legal process, and the facts show only that the officer conducted an improper warrantless arrest, a malicious prosecution claim must fail. *Id*. Here, Novak challenges Trooper Stuart's decision to seek the post-arrest warrant from the magistrate, and not only the warrantless arrest itself. FAC ¶¶ 38, 39, 46, 48, 55, ECF No. 7.

*Reilly*, 643 S.E.2d at 219. Probable cause is determined by the totality of the circumstances. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). It is an "objective standard of probability" that turns on (1) "the suspect's conduct as known to the officer" and (2) "the contours of the offense thought to be committed by that conduct." *Id.* (internal quotation marks and citations omitted). It "requires more than a bare suspicion, [but] it requires less than that evidence necessary to convict." *Id.* (internal quotation marks and citation omitted) It is determined by the suspect's conduct known at the time of the complained-of action. *Id.* (involving a malicious prosecution claim stemming from an arrest made pursuant to a warrant and analyzing the information the officers had at the time they sought the warrant); *Cadmus*, 2016 WL 929279, at *11 (involving both a false arrest and malicious prosecution claim stemming from an arrest and subsequent issuance of arrest warrants and distinguishing between the time of the arrest and the time the arrest warrants were issued and charges filed); *Reilly*, 643 S.E.2d at 219.

If an officer has probable cause to arrest, it usually follows that a prosecution stemming from the arrest had probable cause. *Wilson v. City of Coeur d'Alene*, No. 2:09-CV-00381-EJL, 2010 WL 4853341, at *6 (D. Idaho Nov. 19, 2010); *Wilkerson v. Hester*, 114 F. Supp. 2d 446, 452 (W.D.N.C. Aug. 30, 2000) ("Because the undersigned has concluded that the warrantless arrest and seizure of the Plaintiff was supported by probable cause, and thus, constitutional, the claim for malicious

prosecution also must fall because the seizure was not violative of the Fourth Amendment.") (internal quotation marks and citation omitted).

Here, the relevant Virginia criminal statute makes it unlawful for a person to operate a motor vehicle while under the influence of any intoxicant or drug to a degree that impairs the person's ability to drive or operate the vehicle safely. Va. Code Ann. § 18.2-266. The alleged facts that could, under certain circumstances, support a probable cause finding involving this statute are as follows: (1) Novak was confused and disoriented to a degree that rendered him unable to properly operate his vehicle, turn off his vehicle, and agree to medical treatment prior to being arrested and (2) Novak failed a stand and walk field sobriety test for a lack of balance. Trooper Stuart argues that the alleged facts are enough to support probable cause for being under the influence of an intoxicant and that there were "multiple signs of impairment." Mem. Supp. 14, ECF No. 10. He cites to a number of cases in which probable cause was found for an intoxication-related offense when the defendant was actually experiencing or claimed to be experiencing a medical condition that may have caused similar symptoms. *Id.* at 10–11. But in all of those cases, the behaviors were more extensive that what is alleged here. *See, e.g., Rife v. Okla. Dep't. Pub. Safety*, 854 F.3d 637, 644–45 (10th Cir. 2017) (indicating slurred speech, noting that the officer tested for signs of head injury and did not find any, stating that the officer performed a field sobriety test that "could reveal up to 6 clues

of impairment," noting that the officer conducted four additional field sobriety tests, which the defendant failed or refused to complete, and indicating the arrestee denied being in a motorcycle accident even though the officer knew he had been); *Qian v. Kautz*, 168 F.3d 949, 952, 954 (7th Cir. 1999) (noting that not only had the arrestee appeared to be unstable on his feet, but also that was speaking with what seemed to be slurred speech, the officer had observed that the arrestee had crashed his car and observed no physical signs of injury, and recognizing that "[i]n another situation, it is possible that the absence of the usual evidence of intoxication might be sufficient to defeat a finding of probable cause."); *Walker v. Huntsville*, 310 F. App'x 335, 336–37 (11th Cir. 2009) (unpublished) (explaining that the arrestee had hit a mailbox, her eyes were bloodshot, her speech was slurred, and her purse contained unknown pills); *Henriquez v. City of Bell*, No. CV 14-196-GW(SSx), 2015 WL 13357606, at *12 (C.D. Cal. Apr. 16, 2015) (unpublished) (noting that the arrestee had struck a parked car, was unable to walk without support, had slurred speech, and had vomited). In other words, there were multiple signs of impairment that could have been indicative of drug or alcohol use.

I recognize that "[p]robable cause is not a high bar," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks and citation omitted), and courts, including Virginia's highest court, have found probable cause to exist for intoxication-related offenses based on behavior when no drugs or alcohol have

been found. *See, e.g.*, *Fierst v. Commonwealth*, 173 S.E.2d 807, 810 (Va. 1970) (finding probable cause for intoxication based on the arrestee's position in his car — slumped over with his head lying back against the seat — his speech, his fumbling and inability to produce his license, and his manner of getting out of the car); *Thompson v. Olson*, 798 F.2d 552, 555 (1st Cir. 1986), *Baker v. Paolucci*, No. 2:14-CV-91 (WOB-CJS), 2017 WL 2405369, *3 (E.D. Ky. June 2, 2017). I also acknowledge that a person's failure to adequately complete field sobriety tests can provide an officer with probable cause. *See Brown v. Nabors*, No. 3:09-cv-0927, 2011 WL 2443882, at *5, *14 (M.D. Tenn. June 15, 2011) (unpublished) (noting that the arrestee's "overall performance on the field sobriety tests, including a failure to follow instructions precisely and difficulties with balance[,]" among other things, contributed to the probable cause determination); *see also* Flem K. Whited III, *Drinking/Driving Litigation: Criminal and Civil*, § 5:5 (2d ed. 2022) ("Field sobriety tests are generally relied upon to determine probable cause after the stop of the vehicle. Courts generally will find probable cause where the suspect fails field sobriety tests."). [8]

---

[8] The results of such tests have also been used as circumstantial evidence of intoxication in Virginia. *Forness v. Commonwealth*, No. 1029-21-4, 2022 WL 2307930, at *4 (Va. Ct. App. June 28, 2022).

Nevertheless, at this stage in the litigation I find that the plaintiff has plausibly alleged that Trooper Stuart did <u>not</u> have probable cause to obtain a warrant. *Cf. Babers v. City of Tallassee*, 152 F. Supp. 2d 1298, 1311 (M.D. Ala. 2001) ("Although [the officer] observed some impairment in Plaintiff, no evidence has been presented that [the officer] had direct or circumstantial evidence to indicated that Plaintiff's impairment was caused by a controlled substance."). Novak alleges that he had objective signs of injury — blood on his person — and that the 911 caller had reported what appeared to be a medical emergency. The FAC indicates that no signs of drug or alcohol were apparent, and that Novak quickly regained his understanding on the way to the hospital after failing just one field test for balance issues and passing two breathalyzers. Moreover, Novak's allegation that Trooper Stuart omitted facts material to the magistrate's probable cause determination also plausibly indicates a constitutional violation. *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627, 630–31 (4th Cir. 2007) (involving an arrest made pursuant to a warrant).[9]

---

[9] Trooper Stuart indicates in a footnote in the facts section of his Memorandum in Support that breathalyzers only test for alcoholic content, so the results did not rule out other intoxicants, and that the magistrate equally could have observed the signs of injury, suggesting that there was no need to make that fact known. The results of the breathalyzer, though not entirely determinative of intoxication, and the blood on Novak's person, although potentially observable by the magistrate, could be material to the magistrate's probable cause determination, as is alleged by Novak. Moreover, Trooper Stuart does not raise materiality of these omissions as a ground for dismissal.

I recognize "the difficulty inherent in making on-the-fly determinations regarding possible driving impairments, just as [I] recognize the severity of [impaired] driving and the potential consequences of an incorrect call." *Green v. Throckmorton*, 681 F.3d 853, 866 (6th Cir. 2012) (internal quotation marks and citation omitted). Nevertheless, I find that based on a totality of the circumstances as alleged, Novak has plausibly stated that Trooper Stuart lacked probable cause to obtain a warrant for violating Virginia's driving while intoxicated statute because he lacked sufficient information connecting Novak's conduct to the contours of that offense.

### B. Virginia False Imprisonment.

Count III asserts a claim of false imprisonment under state law. In Virginia, "[f]alse imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011). A plaintiff cannot prevail on a Virginia [false imprisonment] claim if the plaintiff's arrest was lawful. *Id.* "The gist of false imprisonment is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Dill v. Kroger Limited P'ship I*, 860 S.E.2d 372, 381 (Va. 2021) (citation omitted). Virginia permits warrantless arrests for violations of section 18.2-266 with probable cause. Va. Code Ann. § 19.2-81(D) (providing that officer may, within three hours of the alleged offense,

arrest without warrant any person whom the officer has probable cause to suspect of operating a vehicle while intoxicated).

Trooper Stuart contends that Novak's state false imprisonment claim fails for the same reason he believes his other claims should fail — that he had probable cause to arrest Novak for violating Virginia's driving while intoxicated law. In response, Novak argues both (1) that "at no time" did Stuart have probable cause to believe that Novak's condition was caused by intoxicants, Mem. Opp'n 1, ECF No. 11, and also (2) that Stuart did not have probable cause when he obtained a warrant against Novak. In the FAC, Novak alleges that Trooper Stuart had a duty to end the arrest process once he knew that Novak had not committed a crime, which he suggests happened after Trooper Stuart cuffed Novak and before he took Novak before the magistrate.

I find that the FAC plausibly alleges that Trooper Stuart lacked probable cause to make the initial arrest, so I need not decide whether the post-arrest facts are sufficiently exculpatory.[10] The fact that it is alleged that the 911 caller reported a

---

[10] The First Circuit, analyzing a false imprisonment claim brought under Maine law, has found that warrantless arrests based on probable cause may result in false imprisonment claims if an officer fails to release an arrestee, but only if the officer later determines that probable cause for the arrest has dissipated. *Thompson*, 798 F.2d at 556 ("[F]ollowing a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded."). And a non-binding Virginia Attorney General opinion suggests that an arresting officer may release an arrestee before bringing him before a magistrate if probable cause dissipates. 1970-1971 Op. Atty Gen. Va. 102, 1971 Va. AG LEXIS 410 (Feb. 19, 1971).

potential medical emergency, that Novak had objective signs of injury on his person, that he only failed a single stand and walk field sobriety test, that there were no signs of drugs on his person or in his vehicle, that at no time did he state he had consumed any intoxicants, that his speech was not slurred and his eyes were not bloodshot, all plausibly indicate that Trooper Stuart lacked probable cause linking Novak's behavior to an intoxicant, even in light of Novak's disorientation and inability to properly operate his vehicle. In addition, because probable cause determinations are generally more appropriate when the record is fully developed, *cf. Tobey v. Jones*, 706 F.3d 379, 392 (4th Cir. 2013) (noting that "probable cause or its absence will be at least an evidentiary issue in practically all [ ] cases") (citation omitted), I find that Novak has proffered sufficient facts plausibly indicating a lack of probable cause as to his arrest.

### C. *Qualified Immunity.*

Trooper Stuart also argues that he is entitled to qualified immunity. Law enforcement officers enjoy qualified immunity from civil suits when they do not "violate clearly established statutory or constitutional right[] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts undertake a two-prong analysis in determining whether a defendant is entitled to qualified immunity: whether the plaintiff alleges (1) a violation of right that (2) is clearly established at the time of the violation. *Evans v. Chalmers*, 703 F.3d 636,

646 (4th Cir. 2012). The "touchstone" of qualified immunity is whether an officer violated a right that was sufficiently clear so that a reasonable officer would have understood under the circumstances that his behavior violated the right. *Raub v. Bowen*, 960 F. Supp. 2d 602, 613 (E.D. Va. 2013).

Although qualified immunity should be addressed at the earliest possible stage, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), "[o]rdinarily the question . . . should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). Here, it may be the case that Trooper Stuart observed sufficient behavior to reasonably believe Novak was intoxicated beyond what is alleged in the FAC. As I have earlier indicated, the record is simply not developed. Therefore, Stuart cannot establish a right to qualified immunity on the face of the present pleadings.[11]

### D. Punitive Damages.

The Motion to Dismiss also requests that I dismiss Novak's claims for punitive damages. Punitive damages are available under § 1983 and Virginia tort law where the plaintiff shows a reckless or callous indifference to the federally protected rights of others, *Smith v. Wade*, 461 U.S. 30, 56 (1983), or actions that are

---

[11] I emphasize that I merely hold that Novak's claims are sufficient to survive a motion to dismiss. *Tobey*, 706 F.3d at 387 ("A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.") (internal quotation marks and citation omitted).

prompted by ill will, malevolence grudge, spite, wicked intention, or the conscious disregard for the rights of another. *Lee v. Southland Corp.*, 244 S.E.2d 756, 759 (Va. 1978). Although I have dismissed claims for punitive damages at the Motion to Dismiss stage, *see Riley v. Barringer*, 337 F. Supp. 3d 647, 656 (W.D. Va. 2018) (involving a contract claim and noting that "punitive damages generally are not allowed for breach of contract claims"), where such damages are theoretically recoverable under the applicable law as they are here, I find that a motion to dismiss is "a premature means to attack a request for punitive damages." *Debord v. Grasham*, No. 1:14CV00039, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014).

Thus, at this point, I will not preclude recovery of punitive damages.

IV.

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Dismiss, ECF No. 9, is DENIED.

ENTER: August 22, 2022

/s/  JAMES P. JONES
Senior United States District Judge